2010 Ark. 495

**Kenneth R. ISOM, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–1386.**

Supreme Court of Arkansas.

Dec. 16, 2010.

Rehearing Denied Jan. 20, 2011.

Jeff Rosenzweig, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Kent G. Holt, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice.

Kenneth R. Isom appeals a decision of the Drew County Circuit Court denying his petition for postconviction relief under Ark. R.Crim. P. 37.5. The issues on appeal are limited to claims of ineffective assistance of counsel. He was sentenced to death for capital murder and received additional sentences of life in prison for aggravated robbery and rape, sixty years for attempted capital murder and forty years for residential burglary, with the sentences to run consecutively. *See Isom v. State*, 356 Ark. 156, 148 S.W.3d 257 (2004) (where the facts are set out in detail). Isom alleges that he received ineffective assistance of counsel at trial. We affirm the decision of the circuit court denying his Rule 37.5 petition for postconviction relief. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(2).

Isom alleges the circuit court committed multiple errors in denying his petition. The decision of a circuit court granting or denying postconviction relief will be reversed only when that decision is clearly erroneous. *Williams v. State*, 369 Ark. 104, 107, 251 S.W.3d 290, 292 (2007). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made. *Id.*, 251 S.W.3d at 292 (quoting *Howard v. State*, 367 Ark. 18, 25–26, 238 S.W.3d 24, 31–32 (2006)).

In considering a claim of ineffective assistance of counsel, the court hearing the petition applies the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Williams*, 369 Ark. at 107, 251 S.W.3d at 292. The court must consider whether "counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052.

To prove a claim of ineffective assistance of counsel, the petitioner must show (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) that counsel's particular errors "actually had an effect on the defense." *Lee v. State*, 2009 Ark. 255, at 3, 308 S.W.3d 596, 600 (quoting *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052). There is a strong presumption that trial counsel's representation fell within the wide range of reasonable professional assistance. *Id.* at 3, 308 S.W.3d at 600–01. The petitioner bears the burden of overcoming this presumption by identifying specific acts and

omissions that, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.* at 3, 308 S.W.3d at 601. To prevail, a petitioner must also show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 4, 308 S.W.3d at 601 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

■ Isom first asserts that trial counsel was ineffective for failing to investigate, interview, and present Kevin Green as a witness at trial. According to Isom, Green told Bobby Cherry and Todd Bowles that Jerry Avery had confessed to committing the crimes at issue in this case. However, Green testified at the Rule 37 hearing that Avery "never told me that he committed a murder." He also testified that he had not told Cherry that Avery had confessed to him, and he denied knowing Bowles. Therefore, had Green testified at trial, he would not have provided evidence that Avery had confessed. Isom does not show a reasonable probability that but for counsel's failure to call Green as a witness at trial, the result would have been different.

■ Isom next alleges that trial counsel was ineffective for failing to call as trial witnesses, Kevin Green, Alvin Green (Kevin Green's father), Herman Folk, Jr., and Harold Gossin, who testified at the Rule 37 hearing that they saw Avery with a bloodied and bandaged hand after the crimes were committed. Several of the witnesses testified that Avery reported he had cut his hand at work.

Only the victims' blood was identified at the scene. Isom has not presented evidence to show that the perpetrator cut himself in the commission of the crimes. Further, these witnesses are all related to or know Isom. The relevance of the evidence is slight. Isom fails to rebut the presumption that trial counsel's representation fell within the wide range of reasonable professional assistance. He does not show a reasonable probability that but for counsel's alleged unprofessional errors, the result of the proceedings would have been different.

■ Isom also argues that trial counsel was ineffective for failing to investigate, interview, and present Treva Lamb, Yvonne Bealer (Lambert), and Ricky Isom as alibi witnesses. Lamb testified at the Rule 37 hearing that she was speaking with Isom on the phone at the time the murder and the rapes took place; however, she also stated that when she spoke to Isom they discussed the Pamela Knight murder. The Knight murder had not been discovered at the time of the commission of the crimes at issue in this case. Yvonne testified that she was at her mother's house the evening of the murder, that Isom arrived about 7:00 p.m., and that "I answered the phone" when Lamb called. According to Yvonne, Isom was on the phone with Lamb "for at least two hours." Ricky Isom testified that Isom arrived at their mom's house about 5:00 p.m. the night of the murder and did not leave until "shortly after 9:00, just before 10:00." Ricky also testified that he answered the phone when Lamb called and that Isom was on the phone with her for "some hours."

Lamb is the mother of Isom's child. Yvonne and Ricky are Isom's siblings. Both Yvonne and Ricky testified to answering the phone when Lamb called. These are family members who provided conflicting testimony. The decision not to present these witnesses may have been based on their lack of credibility and the effect that would have had on the jury. Isom fails to bear his burden of rebutting the strong presumption that trial counsel's

representation fell within the wide range of reasonable professional assistance. He fails to show that the decision not to present these witnesses could not have been the result of reasonable professional judgment.

 Isom next argues that his trial counsel was ineffective in failing to present additional witnesses in mitigation. The witnesses who testified at trial were jailer Sandra Adock, Isom's sister Tiffany Isom Nolan, his daughter Samantha Isom, and his mother Linda Isom. They testified about the good qualities that Isom has, including his love for his family, his work attributes, and that he is a productive person. According to Isom, Thomas Gathen (superintendent of Dollarway School District), Laura Owens (Isom's aunt), David Isom (Isom's uncle), Steve Phillips (a longtime friend), Calvin Shepherd (Isom's stepfather), Kathy Campbell (Isom's aunt), and Annie Isom (Isom's aunt) would have testified that Isom was a good worker, a talented athlete, and a productive member of society. In comparing the trial testimony of those who testified at trial and the testimony proffered in the Rule 37 hearing, it is clear that the witnesses at trial provided more detailed and more specific testimony than the proffered testimony. The proffered testimony would have been cumulative. Isom fails to bear his burden of rebutting the strong presumption that trial counsel's representation fell within the wide range of reasonable professional assistance.

 Isom further argues that trial counsel was ineffective for failing to challenge the introduction of a judgment and commitment order offered to prove a violent felony as an aggravating circumstance because that judgment and commitment order also revealed nonviolent felonies. The judgment and commitment order was introduced during Drew County Circuit Clerk Kay Craig's testimony. She testified that it concerned second-degree battery, the violent felony the State was introducing as an aggravating circumstance. Craig did not mention any other felonies. The judgment and commitment order was not published to the jury, and it was not in the exhibits reviewed by the jury in deliberations. There is no evidence that the jury ever saw it or was aware of anything on the judgment and commitment order other than the second-degree battery conviction. Isom fails to show that but for the alleged professional errors, there is a reasonable probability the result of the proceedings would have been different.

 Isom next argues that he was deprived of his right to counsel at the photo lineup and that the failure of trial counsel to object to the in-court identification by rape victim Dorothy Lawson deprived him of the opportunity to appeal the circuit court's finding that the earlier out-of-trial photo lineup was not unduly suggestive. On direct appeal, this court refused to consider the allegation of an unduly suggestive photo lineup because there was no objection to the in-court identification. *See Isom,* 356 Ark. at 180–81, 148 S.W.3d at 273–74. Isom offers no proof of error in the circuit court's finding that the photo lineup was not unduly suggestive. Therefore, even if counsel erred in failing to object, Isom fails to bear his burden of showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different.

 Isom also asserts that trial counsel was ineffective in opening the door during closing argument to allow the State to refer to the 2001 murder of Cecil Boren by escaped convict Kenneth Williams. The prosecuting attorney referred to the Boren murder in arguing

that the death penalty should be imposed to remove Isom as a threat to society. Isom alleges that his counsel's prior reference to Charles Manson, and others who were serving life sentences, opened the door to the State's reference to the Boren murder, which was committed by an escaped convict. This court held on direct appeal that "Isom was not denied a fair trial because of the Cecil Boren comment." *Isom,* 356 Ark. at 183, 148 S.W.3d at 275.

■ Finally, Isom argues that trial counsel was ineffective for failing to object to the State's comment during closing argument that "Bill Burton, [the murder victim] had only one judge, one jury, and one executioner. There will be no appeal for Mr. Burton." Citing *Caldwell v. Mississippi,* 472 U.S. 320, 325, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), Isom argues that this communicated to the jury that it did not bear full responsibility for imposing the death penalty; rather, the appellate court would bear part of that burden. Even though there was no objection, this court addressed the issue on direct appeal and concluded that there was no "shifting of the jury's responsibility for fixing the penalty." *Isom,* 148 S.W.3d at 275. Because there was no shifting of the responsibility, Isom's argument fails.

Affirmed.

Special Justice JAMES A. SIMPSON, JR., joins this opinion.

CORBIN, J., not participating.