2010 Ark. 496

**Kenneth R. ISOM, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 09-548.**

Supreme Court of Arkansas.

Dec. 16, 2010.

Rehearing Denied Jan. 20, 2011.

---

Jeff Rosenzweig, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Kent G. Holt, Ass't Att'y Gen., and David R. Raupp, Sr. Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice.

Appellant Kenneth Isom was convicted of capital murder, aggravated robbery, residential burglary, attempted capital murder, and two counts of rape after a jury trial in the Drew County Circuit Court on December 20, 2001. He was sentenced to death for capital murder and received additional sentences of life in prison for aggravated robbery and rape, sixty years for attempted capital murder, and forty years for residential burglary, with the sentences to run consecutively. His convictions and sentences were affirmed on direct appeal to this court. *Isom v. State*, 356 Ark. 156, 148 S.W.3d 257 (2004).

The facts surrounding the crimes were detailed in his direct appeal. *Id.* Dorothy Lawson, who was seventy-two at the time of the crime, testified that he she had been assisting Bill Burton, her deceased husband's brother-in-law, following hip surgery. She was at his trailer on the night of April 2, 2001, when she heard someone knock on the door. She opened the door and a man pushed past her. She testified that she recognized the man as the same man she had been talking to at the neighbor's residence approximately forty-five minutes earlier. The man walked over to Mr. Burton and demanded money. He brandished a broken pair of scissors after Mr. Burton stated he had no money. Mr. Burton then gave the man $240, which did not satisfy him.

Isom next told Ms. Lawson to remove her pants and underwear. He raped her vaginally and anally and forced her to perform oral sex on him. Afterwards, he forced her into a closet. Ms. Lawson then testified that she saw the man standing on Mr. Burton's head. She tried to attack the man, and he took her into the bedroom and knocked her unconscious. At some point she awoke, and the man was choking her. She testified that she could plainly see his face before she passed out again.

Later she awoke alone, bleeding and partially paralyzed. She and Mr. Burton were found after a neighbor entered the side door of the trailer and heard Ms. Lawson crying for help. Mr. Burton was already dead when police officers arrived. Ms. Lawson was transported to the hospital where a rape kit was performed. The doctor found a black hair in Ms. Lawson's vaginal opening. Ms. Lawson gave a statement later that day describing her attacker as a dark-complected black male, who was five feet and seven inches tall to six feet tall with a stocky, muscular build. She further relayed the information that she had seen him several times at a neighbor's home. In a subsequent photographic lineup, Ms. Lawson identified Isom. She told the police lieutenant who conducted the lineup that she was "adamant" about the identification and made the identification "with no uncertainty."

The black hair was analyzed by the Arkansas State Crime Lab. Evidence was then presented at trial that Isom had DNA bands not inconsistent with the hair recovered from the victim and the likelihood of finding another person with the same consistent DNA bands was one in fifty-seven

million in the African American population. Isom was convicted and sentenced as already set out in this opinion, and this court affirmed.

After his convictions were affirmed, Isom filed a Rule 37 petition for postconviction relief. His relief was denied by the circuit court on September 18, 2008. He then appealed to this court. Before this court heard his Rule 37 petition, Isom filed a petition for writ of habeas corpus and a motion for DNA testing pursuant to Arkansas Code Annotated sections 16–112–201 to –208. He requested that this court hold briefing on his Rule 37 petition in abeyance until issues relating to his DNA testing petition were resolved, which this court declined to do. Isom's Rule 37 appeal and his appeal from the denial of his petition for additional DNA testing are now both on appeal to this court.[1]

Subsequent to his trial, Isom moved to re-test the black hair pursuant to Arkansas Code Annotated section 16–112–202, and the State consented to additional testing using a method called "Mini–STR." The Mini–STR test did not exclude Isom as the contributor of the ⌊4DNA profile developed from the black hair but established that the likelihood of finding another person with the same consistent DNA bands was 1 in 580,000 for a non-relative.[2]

Isom then moved for additional DNA testing and requested specifically that the circuit court order the black hair taken from the crime scene compared to DNA from two men, Kevin Green and Jerry Avery. Isom states in his motion that he is related to both Green and Avery and that both men are suspects in this case. He further asserts that the DNA of each

man is already in the Arkansas DNA database because of previous convictions.

To support his motion for additional testing, Isom provided an affidavit from his mother, Linda Isom, that Avery was his third cousin. In his Rule 37 proceeding, he also offered testimony from various people who averred that they spoke to Isom on the phone during the time the crime took place, that Avery was seen with a bandaged and bloodied hand the night of the crime, and that Isom was calm and unbloodied on the night of the crime. Isom claims that because the death penalty is imposed in his case, he has a constitutional right to have the DNA from the black hair compared to Avery's DNA in the Arkansas DNA database. He ultimately asserts that the circuit court misinterpreted Arkansas Code Annotated sections 16–112–201 to –208 and clearly erred and abused its discretion in denying his motion for additional testing.

### II. Standard of Review

The parties offer different standards of review for this court to use in this case on appeal. Isom urges this court to use a de novo standard of review in its statutory interpretation and contends that the circuit court misinterpreted the Arkansas DNA testing statutes. The State argues, on the other hand, that the standard should be the same as that applied to the denial of postconviction relief, which is clear error.

The operable statute subject to our examination provides, "(b) [i]f the deoxyribonucleic acid (DNA) test results obtained under this subchapter are inconclusive, the court may order additional testing or deny

---

1. Isom's Rule 37 appeal is *Isom v. State,* CR08–1386.

2. The State argues that the DNA testing did not reduce the chances by much, if at all, because it is unclear whether the new testing

looked at additional alleles, different alleles, or a combination of the same and some different alleles, from the alleles reviewed in the original test.

further relief to the person who requested the testing." Ark.Code Ann. § 16–112–208(b) (Repl.2006).

■■■ Ordinarily, the clear error standard is the correct standard to apply in a postconviction case. In *Misskelley v. State,* 2010 Ark. 415, 2010 WL 4366985, this court said:

In appeals of postconviction proceedings, we will not reverse a trial court's decision granting or denying postconviction relief unless it is clearly erroneous. *Johnson v. State,* 356 Ark. 534, 542, 157 S.W.3d 151, 158 (2004). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.* The same standard of review applies when a trial court denies DNA testing under Arkansas Code Annotated sections 16–112–201 to –208. *See, e.g., Davis v. State,* 366 Ark. 401, 235 S.W.3d 902 (2006).

*Id.* at 4–5. Nevertheless, because the statute at issue in the instant case says that the court "may order" additional testing upon a finding of inconclusiveness, we conclude that the standard of abuse of discretion applies when the trial court denies relief under section 16–112–208(b).

## II. *Inconclusive Test Results*

In the order denying further testing, the circuit court did not specifically address inconclusiveness but made the following findings:

2. That while the additional testing allowed by the Court herein, and conducted at the Defendant's request by Bode Technologies, increased the probability somewhat than another unknown person[al] could have contributed the partial DNA profile, the testing still did not exclude Isom. The testimony at trial was that the chances of the partial profile being attributable to someone else was one in fifty-seven million. The Bode test was that the possibility was one in five-hundred-eighty-seven thousand for non-relatives.

. . . .

4. The Court has previously found that the Defendant has not shown sufficient facts to conclude that Kevin Green was in any way remotely connected with the facts in this case. The Defendant has simply shown no reason past pure conjecture why Kevin Green should be tested at all.

5. The defendant has submitted an affidavit of his mother that Jerry Avery is his third cousin once removed. The Court concludes from reading Petitioner's Exhibits One and Two from the hearing herein that such an attenuated relationship could not possibly change the results of the testing in this case, even if the Court allowed testing of Jerry Avery's DNA against the sample from the hair collected from the person of Dorothy Lawson, which could not be excluded as Isom's.

■ Isom contends that these findings by the court support a finding of "inconclusiveness" because only a partial DNA profile of the black hair was used for the Mini–STR testing and the Mini–STR test did not exclude relatives, such as Kevin Green and Jerry Avery, as matches. Isom's argument to the circuit court and on appeal, however, is not so much that he is not a DNA match but rather that someone else, and specifically Kevin Green or Jerry Avery, might also be matches. While we question whether the circuit court actually made a finding that the tests were inconclusive, both Isom's argument and the State's argument center on the fact that the test results are inconclusive. We conclude that the court did not abuse

its discretion in denying additional testing pursuant to Arkansas Code Annotated section 16–112–208(b) (Repl.2006).

### III. *Right to Additional Testing*

Isom contends that he has a constitutional right under the Due Process Clause of article 2, section 8 of the Arkansas Constitution to access the DNA of Kevin Green and Jerry Avery in the state databases for postconviction testing.[3] He emphasizes that this case does not present a Fourth Amendment issue of forcing a third party to give a DNA sample because the State already has DNA samples from Green and Avery in its possession. His contentions must fail.

■ There is no constitutional right to a postconviction proceeding; but when the State undertakes to provide collateral relief, due-process concerns require that the proceeding be fundamentally fair. *See Robinson v. State*, 295 Ark. 693, 699, 751 S.W.2d 335, 339 (1988). Arkansas Code Annotated section 16–112–208(b) provides, "[i]f the deoxyribonucleic acid (DNA) test results obtained under this subchapter are inconclusive, the court may order additional testing or deny further relief to the person who requested the testing." As this court recently explained, section 208(b) refers to DNA test results that are scientifically inconclusive, not results that are legally inconclusive. *See Echols v. State*, 2010 Ark. 417, 373 S.W.3d 892. Isom has not been excluded as the perpetrator under two DNA tests and, indeed, was matched with the hair found on the victim's person. Further testing of third parties would not change that fact. However, the DNA profile developed was only a partial profile, and, therefore, the results are best characterized as inconclusive rather than as establishing Isom as the source of the DNA evidence.

In denying the motion for additional testing of third persons, the trial court considered the fact that, while the testing somewhat increased the probability that another unknown person could have contributed the partial DNA profile, the testing still did not exclude Isom. We are also mindful that Ms. Lawson was "adamant" and certain about her identification of Isom. Finally, the circuit court found that Isom's relationship to Avery was "attenuated" and that there had been no showing of Green's involvement past pure conjecture.

■ We hold that when DNA test results match the person requesting additional testing, it is not fundamentally unfair to refuse additional testing. We further hold that the circuit court did not abuse its discretion in denying additional testing under section 16–112–208(b) based on the fact that the test results conducted pursuant to Isom's original petition do not exclude him as the source of the DNA evidence and further testing of third parties would not conclusively eliminate him.

Affirmed.

HANNAH, C.J., and DANIELSON, J., concur.

Special Justice JAMES A. SIMPSON, JR., dissents.

CORBIN, J., not participating.

PAUL E. DANIELSON, Justice, concurring.

Because I agree that the circuit court did not err in denying Isom further testing, I too would affirm. However, because

---

**3.** Isom concedes that there is no federal due-process right to access evidence for postconviction testing. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009).

I believe the wrong analysis was used in the majority opinion, I respectfully concur.

After Isom's first testing, uncontested by the State, was complete, he requested additional testing. Although he did so in what he titled an amended petition, it was a new request. He requested that the DNA of two other individuals be taken and compared to the DNA sample. Therefore, his request for additional DNA testing must have met the requirements set forth in Arkansas Code Annotated section 16–112–202.

As the majority notes, we have made clear the correct standard of review in a postconviction case:

In appeals of postconviction proceedings, we will not reverse a trial court's decision granting or denying postconviction relief unless it is clearly erroneous. *Johnson v. State*, 356 Ark. 534, 542, 157 S.W.3d 151, 158 (2004). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.* The same standard of review applies when a trial court denies DNA testing under Arkansas Code Annotated sections 16–112–201 to –208. *See, e.g., Davis v. State*, 366 Ark. 401, 235 S.W.3d 902 (2006).

*Misskelley v. State*, 2010 Ark. 415, at 4–5, 2010 WL 4366985.

Because I do not believe that Isom's request for testing met the requirements of section 16–112–202, the circuit court did not clearly err.

HANNAH, C.J., joins.

Special Justice JAMES A. SIMPSON, JR., dissenting.

This Court has historically applied standards of heightened scrutiny in death cases. *See Robbins v. State*, 354 Ark. 1, 114 S.W.3d 217 (2003). Section 1 of Act 1780 of 2001 proposed:

The General Assembly finds that the mission of the criminal justice system is to punish the guilty and to exonerate the innocent. The General Assembly further finds that Arkansas laws and procedures should be changed in order to accommodate the advent of new technologies enhancing the ability to analyze scientific evidence.

Act of Apr. 19, 2001, No. 1780, 2001 Ark. Acts 7737.

For these reasons, the trial court ordered, with the agreement of the prosecution, additional testing of the partial DNA evidence taken from the victim, Ms. Lawson. That testing increased the possibility that another person may have committed this crime. Our procedure for convicted felons is to place their DNA into a databank for purposes of availability in solving other crimes. Isom's request for the trial court to allow additional testing of a known suspect, Mr. Avery, was reasonable. Had the testing been available at the time of trial, Avery could have been ordered to be tested under our laws. The majority's conclusion that the trial court's refusal to order additional testing was justified because the results were inconclusive fails to recognize that no testing of Avery has been conducted. As for the possibility that Avery may have been matched, thus giving Isom the reasonable probability that he is innocent, we will never know.

It is my opinion the language in the statute, "to punish the guilty and to exonerate the innocent" is purposely broad in order to allow a wide range of testing. While this crime was a vile and heinous act for which the perpetrator should be punished, the protection our laws provide for death-penalty cases should extend to allow for the additional testing requested by

Isom. For these reasons, I respectfully dissent.