JOSEPHINE LINKER HART, Associate Justice |rA jury found Kenneth Isom guilty of capital murder, aggravated robbery, residential burglary, attempted capital murder, and two counts of rape and sentenced him, respectively, to sentences of death, life imprisonment, 40 years’ imprisonment, 60 years’ imprisonment, and life on each count of rape, with the sentences to be served consecutively. This court affirmed his convictions and sentences. Isom v. State, 356 Ark. 156, 148 S.W.3d 257 (2004). Isom further sought postconviction relief under Arkansas Rule of Criminal Procedure 37.5, and this court affirmed the circuit court’s denial of his petition. Isom v. State, 2010 Ark. 495, 370 S.W.3d 491. Isom now petitions this court to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis. We grant his petition to reinvest jurisdiction. The proper standard of review for granting permission to reinvest jurisdiction in the circuit court to pursue a writ of error coram nobis is whether it appears that the proposed 1 ¡¡.attack on the judgment is meritorious. Howard v. State, 2012 Ark. 177, at 4-5, 403 S.W.3d 38, 43. In making such a determination, we look to the reasonableness of the allegations of the petition and to the existence of the probability of the truth thereof. Id., 403 S.W.3d at 43. A writ of error coram nobis is available to address certain fundamental errors extrinsic to the record, such as material evidence withheld by the prosecutor. Id. at 4, 403 S.W.3d at 42-43. To establish a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) by the State’s withholding of evidence, the evidence at issue must be favorable to the accused, either becausé it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; prejudice must have ensued. Id. at 8, 403 S.W.3d at 44. Isom was convicted of killing Bill Burton and attempting to kill Dorothy Lawson, and of committing two counts of rape against Lawson, aggravated robbery, and residential burglary, based on an incident at Burton’s trailer on April 2, 2001. Lawson, who was 72, was at Burton’s home with Burton, who was 79. Burton had recently had hip surgery, and Lawson was there to care for him. Lawson testified that she opened the door that evening to a man she had seen next door earlier that day. Lawson identified Isom as the man who pushed passed her and demanded money from Burton. Burton gave him some money, but Isom was not satisfied and pulled a pair of broken scissors from his pocket. Lawson testified that Isom had her remove her clothes, raped her vaginally and anally and forced her to perform oral sex on him. Lawson testified that he forced her into a closet and that when she looked out she saw Isom standing on Burton’s head. Lawson fought with Isom in an attempt to prevent him from hurting Burton, and she cut her hand on the scissors in the process. Lawson was knocked unconscious, | schoked, and she eventually passed out. A neighbor found her the next morning, bleeding, partially paralyzed, and crying for help. At the hospital, the doctor performing the rape-kit examination found a hair in Lawson’s vaginal opening. Analysis of that hair excluded Lawson or Burton as DNA contributors. The analysis also determined that a DNA sample from Isom had bands that were not inconsistent with those in the hair’s DNA. The original analysis determined the likelihood of finding another person with the same consistent DNA bands was 1 in 57,000,000 in the African-American population. The additional testing conducted postconviction established the likelihood of finding another person with the same consistent DNA bands was 1 in 580,000 for a nonrelative. On April 5, 2001, an officer visited with Lawson in the hospital to see if she could identify her assailant from a photographic lineup. After first focusing on photographs one and three, she selected photo three, which was Mr. Isom. In addition to Lawson’s testimony at trial, Ken Ouellette testified that he drove by the Burton residence at about 7:00 p.m. on April 2, 2001. He saw Lawson and a gentleman he later identified as Isom talking in front of the house next door to Burton’s. Linda Kay Johnson, who lived across the street, testified that she knew Isom, had seen him at the house next door to Burton’s on previous occasions, and had seen him talking to Lawson some time before 7:00 p.m. on April 2, 2001. In his petition and an attached proposed petition for filing in the trial court, Isom sets out a number of proposed grounds for the writ based on various claims that the prosecution withheld evidence. The grounds proposed are as follows: (1) the State suppressed evidence that LLawson did not identify Isom as her attacker in a photo array shown to her on April 4, 2001; (2) the State suppressed evidence that Lawson failed to identify Isom in a photo array shown to her on April 5, 2001; (3) the State suppressed Rick McKelvey’s investigative notes about the interviews of Lawson while she was in the hospital; (4) the prosecution failed to correct false testimony when Lawson testified that she was not on pain medication while in the hospital and that she did not attempt to make an identification without her glasses; (5) the State suppressed evidence that Ouel-lette was aware that Isom was the main suspect before identifying him; (6) the State suppressed evidence that Ouellette had a motive to curry favor with the police department; (7) the State suppressed evidence concerning the DNA evidence by turning over illegible copies of documents and incomplete copies of the gel strips or DNA ladders; (8) the State suppressed evidence of alternative suspects. We focus on Isom’s last claim, which is that the State withheld evidence that might have led counsel to utilize a defense based on an alternate suspect. Prior to trial, Isom’s attorneys had notified the prosecution that they planned to call as witnesses a number of the prosecutors involved in the case, and, as a result, there was a pretrial hearing on a motion to quash the subpoenas. Deputy Prosecutor Frank Spain testified during that hearing concerning potential evidence from Kevin Green. The defense was aware of some letters written by inmates who claimed that, while he was incarcerated, Green had said that he smoked crack with Jerry Avery and that Avery had told Green that he committed the Burton murder. Green, according to the inmates’ letters, intended to use the information from Avery to strike a deal with the prosecution so that he could be released on his own recognizance. Spain was ^questioned about whether he was involved with a search conducted by the detectives investigating Burton’s murder as a result of information from Green. Spain’s testimony at the pretrial hearing was that he was told by Green’s attorney and some of the officers working the case that Green had information about the weapon in Burton’s murder and that Green wanted to be released from jail. Spain agreed to the deal, and he went to a house where the weapon was supposed to be. According to Spain’s testimony at the hearing on the motion to quash, they looked for the weapon and “[n]o item was found.” The motion to quash was granted, and no defense was developed at trial using Green or Avery as an alternate suspect. At Isom’s Rule 37.5 hearing, Spain was sworn, and he reaffirmed an unsworn account under oath. In it, he stated that one of the police officers had come to him because Green had approached them with information similar to what had been in the inmate letters. Green wanted to be released on his own recognizance before he would give the information, and Spain testified that he would not give Green what he wanted until they had the information and it proved to be useful. Spain stated that they went to the place where Green said that the evidence could be collected and that the officers searched the trailer home located there. Green said he believed that a pair of scissors was recovered, that he looked at whatever it was that had been recovered, and released Green. Spain also said that the scissors were sent to the crime lab for testing, but did not produce anything to connect them to the crime. Thus, Spain’s testimony during the pretrial hearing was at odds with his testimony in the Rule 37.5 hearing. Given that Spain, under oath, has testified to two different versions of |fithe facts, we are compelled to have the circuit court conduct an evidentiary hearing, as we are not in the position to exalt one version over the other. If Isom is correct, and Spain’s testimony at the Rule 37 hearing was the accurate one, then there was clearly a fundamental error of fact extrinsic to the record that prevented Isom from presenting Spain as a witness and developing his alternative theory that Avery, not Isom, committed the murder. In .addition, if Spain’s new version of the facts is correct, then there is a fundamental error of fact because there was an additional pair of scissors discovered on which DNA testing may or may not have been performed. We cannot ignore that there may be excul-pable or impeaching evidence favorable to the accused that may have been willfully or inadvertently suppressed by the State, resulting in the circuit court quashing a subpoena to consider evidence related to other possible suspects.[1] Based on the foregoing, we grant Isom’s petition to reinvest jurisdiction in the circuit court to seek a writ of error coram nobis on his claim of Brady violations. While Isom raises additional Brady claims that we could consider in this opinion, see Howard, 2012 Ark. 177, at 27-28, 403 S.W.3d at 54-55 (granting petition in part), we reinvest jurisdiction in the circuit court to consider these claims as well, see Newman v. State, 2009 Ark. 539, 354 S.W.3d 61 (reinvesting jurisdiction in the circuit court to consider several Brady claims raised by the petitioner). Further, when an error coram nobis claim has apparent merit, this court often leaves it to the circuit- court to determine the factual issue of diligence. Howard, 2012 Ark. 177, at 14, 403 S.W.3d at 47. Thus, we also leave to the circuit court consideration of whether Isom’s petition was timely- 17Petition granted. Hannah, C.J., and Danielson and Goodson, JJ., dissent. . We also note that Isom has asserted that he is related to Avery and has sought to test Avery’s DNA. Isom v. State, 2010 Ark. 496, 372 S.W.3d 809.