SLIP OPINION

Cite as 2016 Ark. 93

# SUPREME COURT OF ARKANSAS.
### No. CR–11–1209

| | | |
|---|---|---|
| BRIAN JORDAN | | **Opinion Delivered** March 3, 2016 |
| | PETITIONER | |
| | | PRO SE PETITION TO REINVEST |
| V. | | JURISDICTION IN THE TRIAL |
| | | COURT TO CONSIDER A |
| | | PETITION FOR WRIT OF ERROR |
| STATE OF ARKANSAS | | CORAM NOBIS |
| | | [BENTON COUNTY CIRCUIT |
| | RESPONDENT | COURT, NO. 04CR-10-1004] |
| | | |
| | | PETITION DENIED. |

**PER CURIAM**

On February 27, 2010, the Benton County Sheriff's Office received a call that a seventy-five-year-old woman had been sexually assaulted in her home. The victim identified Brian Jordan, a former neighbor who had recently begun visiting her, as her attacker. In 2011, Jordan was found guilty by a jury of raping the victim and was sentenced as a habitual offender to life imprisonment. We affirmed. *Jordan v. State*, 2012 Ark. 277, 412 S.W.2d 150.

Jordan subsequently filed in the trial court a petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1 (2011) in which he contended that he was denied effective assistance of counsel because his trial attorney did not introduce certain evidence at trial and raise arguments related to the evidence to support his defense that the victim had offered him money in exchange for sex. The trial court denied the relief sought under Rule 37.1. This court affirmed the order. *Jordan v. State*, 2013 Ark. 469 (per curiam).

Now before us is Jordan's pro se petition to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis in the case. The petition for leave to proceed in the trial court is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. A writ of error coram nobis is an extraordinarily rare remedy. *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). Coram-nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Westerman v. State*, 2015 Ark. 69, at 4, 456 S.W.3d 374, 376; *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771.

The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts*, 2013 Ark. 56, 425 S.W.3d 771. The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id*. A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38.

As grounds for the writ, Jordan asserts that the State violated his right to due process of law pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963) by concealing information from

the defense.  A review of the *Brady* claim suggests that Jordan has misconstrued the nature of a *Brady* violation and the purpose of a coram-nobis proceeding.

A *Brady* violation is established when material evidence favorable to the defense is wrongfully withheld by the State.  *Isom v. State*, 2015 Ark. 225, 462 S.W.3d 662.  In *Strickler v. Greene*, 527 U.S. 263 (1999), the Supreme Court revisited *Brady* and declared that, when the petitioner contends that material evidence was not disclosed to the defense, the petitioner must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  To determine whether the proposed attack on the judgment is meritorious so as to warrant the granting of permission to reinvest jurisdiction in the trial court to pursue a writ of error coram nobis, this court looks to the reasonableness of the allegations of the petition and to the existence of the probability of the truth of those claims.  *Isom*, 2015 Ark. 225, 462 S.W.3d 662.

Jordan alleges that there was criminal wrongdoing in the form of witness tampering, witness intimidation, witness bribery, and false swearing committed by the two officers who investigated his case, the prosecutor, a deputy prosecutor, and the rape victim.  He bases his claims on letters that he had written to the prosecutor and the circuit judge in which he alleged the wrong doing and called for those persons to be criminally prosecuted.  He further relies on information contained in pro se pleadings that he had filed in the trial court in which he pointed out inconsistencies in testimony, questioned the reliability of the evidence adduced at trial, and argued that crimes had been committed in order to obtain his conviction.

In addition to asserting that the persons committed crimes to obtain his conviction, Jordan has also appended to his petition the affidavit of Cleo Horton, which states that Horton was coerced by investigators into changing his pretrial statement to be less favorable to Jordan and that these same investigators suppressed a letter Horton wrote in 2010, asking about promises made by police of favorable treatment to Horton.

The request to reinvest jurisdiction in the trial court is denied. We first note that, in his Rule 37.1 proceeding, Jordan raised claims pertaining to the same allegedly false statements by investigators that were incorporated in a police report with regard to the interrogation of Cleo Horton; claims of police intimidation which allegedly coerced Horton into recanting his statement that the victim had offered him money in exchange for sex on several occasions; a letter allegedly written by Horton in September 2010 in which Horton confessed to being untruthful when he recanted his statement, along with the explanation that he had lied to cover up his participation in robbing the victim on the same night that the rape occurred and because he was promised probation; grievances authored by Jordan, which complained that police had assaulted him in an attempt to force him to confess to committing the rape and to writing the Horton letter; and an email sent by the victim that Jordan claimed evinced the family relationship between an investigator and the victim. As stated, the trial court found no merit to Jordan's arguments, and we affirmed the trial court's decision. Jordan makes many of the allegations in this coram-nobis petition that were addressed in the Rule 37.1 proceeding, but those assertions are now couched as *Brady* violations.

SLIP OPINION

The documents submitted by Jordan in the Rule 37.1 proceeding included an "Affidavit of Probable Cause to Obtain an Arrest Warrant" in which Investigator Kenneth Paul of the Benton County Sheriff's Office attested that, on February 27, 2010, the sheriff's office began an investigation into the rape of the victim that led to the arrest of Jordan. Investigator Paul further attested that on May 28, 2010, Jordan, while an inmate in the Benton County jail, gave investigators the name of fellow inmate Cleo Horton as a witness to the victim's offer of money in exchange for sex. During the interview, Horton told Investigator Paul that the victim had been known to offer money in exchange for sex. According to the affidavit, Investigator Paul continued the interview and then turned off the audio recording in preparation of taking Horton back to jail. After determining that Horton's narrative was strikingly similar to Jordan's statement, Investigator Paul told Horton that he would be charged if it was determined that he was being untruthful and that this was his opportunity to tell the truth. According to Investigator Paul, Horton then stated that he had made up the story because Jordan told him that, if he could get Jordan out of jail, Jordan would post his bond. Horton stated that Jordan had told him that the victim had never offered sex to anyone, and he apologized for lying. According to the affidavit, Horton stated that Jordan had asked him to lie "to try to cover up what he did." Jordan also included several incident reports prepared by the sheriff's office in the documents submitted in support of his Rule 37.1 petition and an amendment to the petition. One report referred to a September 2010 letter received by the prosecuting attorney's office allegedly written by Horton. The letter stated that Horton had lied when he recanted his statement in the May interview in order to cover up his participation in the robbery of the

victim and because he was promised probation by Investigator Paul. In the letter, Horton's name was spelled incorrectly. Investigators then interviewed Horton, who stated that he did not write the letter. Jordan also included two affidavits, dated August 24 and 25, 2011, allegedly prepared by Horton. In one affidavit, the affiant stated that investigators coerced him into recanting his May statement that the victim had offered him money in exchange for sex. In a second affidavit, the affiant stated that investigators coerced him into denying that he wrote the September 2010 letter. Finally, the documents included an email sent by the victim, as well as grievances submitted by Jordan in which he stated that he had been attacked by a member of law enforcement while he was in jail.

It is clear from the allegations raised under Rule 37.1 that Jordan was well aware of the circumstances concerning Horton's statement. He has not demonstrated that Horton's pretrial statement was not available to the defense or that Horton could not have been examined by defense counsel at trial concerning the veracity of the statement and any other circumstances pertaining to his giving the statement. To the extent that Jordan intended his allegation to be that Horton recanted his statement, recanting a previous statement is not grounds for a writ of error coram nobis. *See Thomas v. State*, 367 Ark. 478, 482, 241 S.W.3d 247, 250 (2006) (per curiam).

With respect to the remaining assertions in the request to reinvest jurisdiction in the trial court, Jordan has not demonstrated that any material evidence was withheld by the State. Instead, he has mounted a thinly disguised attack on the sufficiency of the evidence to sustain the judgment of conviction based primarily on the contents of his own letters and pleadings filed in the trial court. The sufficiency of the evidence is not an issue cognizable

SLIP OPINION

in coram-nobis proceedings. *Ventress v. State*, 2015 Ark. 181, at 6 (per curiam). Whether the evidence supports the judgment is a question to be addressed at trial, and coram nobis does not provide a second opportunity to challenge the evidence. *See Bond v. State*, 2015 Ark. 470 (per curiam).

Because Jordan has presented no facts sufficient to demonstrate that there was information not known at the time of trial, or which could not have been known at the time of trial, that was concealed by the State, he has failed to establish good cause for the writ. The application for coram-nobis relief must make a full disclosure of the specific facts relied on inasmuch as statements that are not supported by facts are not sufficient to warrant granting the writ. *Noble v. State*, 2015 Ark. 215, at 3, 462 S.W.3d 341, 344 (per curiam). Jordan's allegations do not establish that there was some material evidence withheld that would have prevented rendition of the judgment had it been known at the time of trial. *See Isom*, 2015 Ark. 225, 462 S.W.3d 662.

Petition denied.