RHONDA K. WOOD, Associate Justice 11 Karl Roberts appeals the circuit court’s finding that he has the capacity to choose between life and death and to knowingly and intelligently waive his right to post-conviction relief. He also asserts that mandatory review should be extended to postconviction proceedings in capital cases and that a rejection of his attempt to rescind his waiver violates the “solid footing” doctrine. We hold that the circuit court erred when it found that Roberts has the capacity to choose between life and death and could make a knowing and intelligent waiver; accordingly, we reverse and remand. I. Background In May 2000, Roberts was convicted of capital murder and sentenced to death for the murder of his twelve-year-old niece. Following his conviction, Roberts filed a waiver of appeal and of postconviction review. A hearing was held on the waiver, and ■ the circuit court found, that Roberts had the capacity to knowingly and intelligently waive his appeal | ¿rights. This court conducted an automatic review pursuant to State v. Robbins, 339 Ark. 379, 5 S.W.3d 51 (1999), and affirmed Roberts’s waiver of his right to appeal, as well as his conviction and sentence. Roberts v. State, 352 Ark. 489,102 S.W.3d 482 (2003). In May 2003, the circuit court held a hearing pursuant to Arkansas Rule of Criminal Procedure 37.5 (2015). At the hearing Roberts appeared pro se and again waived his right to seek postconviction relief. . The circuit court concluded that he had the capacity and the competency to knowingly and intelligently waive his right to postconviction relief. This court reviewed the record of Roberts’s Rule 37.5 waiver hearing and affirmed the circuit court’s findings. See State v. Roberts, 354 Ark. 399, 123 SW.3d 881 (2003). Then, in January 2004, the day of his scheduled execution, Roberts moved for a stay of execution in the United States District Court for the Eastern District of Arkansas, which was granted. In July 2004, Roberts filed a writ of habeas corpus with the federal district court, but in 2007, the federal district court granted Roberts’s request to hold the federal habeas corpus petition in abeyance, directing Roberts to seek relief in the- state courts i-egarding all unexhausted claims. ..The federal habeas petition is currently stayed for Roberts to be given an opportunity “to convince the state courts that he did not competently waive his right to appeal and seek state post-conviction relief’ and “to seek relief in the state courts under Rule 37.5 regarding all unexhausted claims.” See Roberts v, Norris, 526 F.Supp.2d 926 (E.D.Ark. 2007). Thereafter, Roberts filed an untimely Rule 37,5 petition and an amended post-conviction petition, which the circuit court denied. In January 2012, Roberts filed a | amotion to reopen the proceedings and reinvest the circuit- court with jurisdiction. Roberts v. State, 2013 Ark. 57, 426 S.W.3d 372. We grantéd Roberts’s motion and -held that a .more recent competency evaluation of Roberts was required to adequately determine his competency to elect execution and waive postconviction remedies. Id, Roberts was subsequently evaluated, and the circuit court held a hearing to determine whether Roberts’s waiver of his postconviction appeals was made knowingly and intelligently and with the capacity to choose between life and death. It concluded that Roberts was competent and had the capacity to., waive his postconvic-, tion rights. Accordingly, the circuit court dismissed Roberts’s petition for postcon-viction relief. Roberts now appeals the circuit court’s decision regarding competency and capacity. . II. Analysis Roberts asserts several bases on which we should reverse the circuit court. Roberts first, contends that the circuit court failed to make “sufficient findings of fact and conclusions of law sufficient to. allow for meaningful appellate review.” He alleges, in the alternative, that the circuit court’s conclusion that he is competent to knowingly and intelligently waive all rights to postconviction relief and has the capacity to choose between life and death is clearly erroneous and that the circuit court substituted its opinion'for that of the experts who testified at the postconviction hearing. Roberts also argues that this court should establish a mandatory post-conviction proceeding and review for death-penalty defendants who waive their postconviction rights. Finally, he claims that this court should reverse the circuit court’s acceptance of Roberts’s waiver under the “solid footing” doctrine. |4We must determine preliminarily whether the circuit court issued sufficient findings to allow for meaningful appellate review. We conclude that it did. As he does on appeal, Roberts raised six points in his prehearing brief: (1) whether Roberts is incompetent to waive under Rees v. Peyton, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966); (2) whether Roberts’s waiver is illness driven and thus involuntary; (3) whether Roberts is incompetent under Franz v. State, 296 Ark. 181, 754 S.W.2d 839 (1988); (4) whether Roberts’s waiver is not “knowing” and “intelligent”; (5) whether the waiver should be disallowed under the “solid footing” doctrine; and (6) whether the court should require mandatory postconviction review. However, the first four points all address the issue of whether- Roberts was competent to waive his postconviction rights. When a petition for postconviction relief is denied following a hearing, Arkansas Rule of Criminal Procedure 37.5(i) requires that the court “make specific written findings of fact with respect to each factual issue raised by the petition and specific written conclusions of law with respect to' each legal issue raised by the ’ petition.” Absent such findings, 'there can be no meaningful áppellate review because the court determines whether the findings are supported by a preponderance of the evidence. See Charland v. State, 2012 Ark. 246, 2012 WL 1950251. . Albéit concise, the circuit court’s findings sufficiently specify the basis for its ruling. With regard to the first four issues raised in Roberts’s brief, the circuit court’s order denying postcoriviction relief states that it considered the testimony and reports of Dr. Mark Peacock and Dr. Daryl Fujii, Roberts’s letter to Judge Richard Kopf, Roberts’s letter to the circuit | ¿court, and affidavits of various people who had assisted in Roberts’s defense. It applied the standard of competency this court outlined in Roberts v. State, 2013 Ark. 57, 426 S.W.3d,372, and concluded that Roberts “is competent to knowingly and intelligently waive all rights to post conviction relief and has the capacity to choose between life and death (i.e., elect execution) and to forego representation.” We conclude that this sufficiently addressed the first four issues raised by Roberts, all of which fall under the umbrella of waiver. In addition, the circuit court adequately addressed Roberts’s remaining arguments by finding that they were inapplicable and moot, respectively.[1] Turning tó the merits, although Roberts divides the issue o’f competency into separate points, the crux of his appeal is whether he is competent to waive his postconviction remedies. The standard for competency to elect execution is not equivalent to the standard for competency to stand trial. Roberts, 2013 Ark. 57, at 11, 426 S.W.3d at 378. “[A] defendant sentenced to death; will be able to forego a state appeal only if he has been judicially determined to have the. capacity to understand the choice between life and death-Rand to knowingly and . intelligently waive any and all rights to appeal his sentence.” Franz, 296 Ark. 181, 754 S.W.2d 839, over-. ruled on other grounds by .State v. Robbins, 339 Ark. 379, 5 S.W.3d 51 (1999). This is the standard that governs the waiver of rights to postconviction remedies following the affirmance of a death sentence, and we will reverse only if we find that the trial judge’s conclusion is clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the. entire evidence, is left with the definite and firm conviction that a mistake has been made. Sartin v. State, 2012 Ark. 155, 400 S.W.3d 694,' At the competency hearing in the circuit court, both parties presented testimony from psychological experts. The experts agreed that Roberts suffers from schizophrenia. Thus, the pertinent inquiry is whether this mental disease renders Roberts incapable of choosing between life and death or knowingly and intelligently waiving his postconviction rights. The State’s expert, Dr. Mark Peacock, testified that he- diagnosed Roberts- with schizophrenia with themes of auditory and visual hallucinations and delusional beliefs. On direct examination, Dr.'Peacock testified- that there are varying degrees of schizophrenia and that this diagnosis does not necessarily mean that the person is incompetent to make a rational decision. However, when asked if Roberts was competent to make a decision whether to live or die, Dr. Peacock failed to reach an ultimate conclusion. He stated, [I]t’s a veiy difficult call for me just because there were elements of both psychotic reasoning involved in what I believe was going on with Mr. Roberts’ decision as -well as some very overtly stated, rational sounding reasons for why he would want | 7to waive his [proceedings] ... And whether one or the other amount to .what I guess a preponderance of evidence was a call that I just didn’t feel qualified or competent enough to make at that time. On cross-examination, Dr. Peacock conceded that the psychotic symptoms from which ¡Roberts suffers influence his desire to waive and that-his thoughts and decision making are colored by- his psychotic experiences. Peacock further admitted that Roberts’s symptoms raised a significant concern about his capacity for making rational and stable decisions about matters as permanent as death. Roberts = presented the testimony of a neuropsychologist, Dr. Daryl Fujii. Like Dr. Peacock, Dr. Fujii stated that he noticed symptoms tif schizophrenia, including auditory hallucinations and delusions, during-his interview with Roberts. Dr. Fujii testified that while Roberts understands the implicátion of waiving his postconviction rights and can offer some rational-sounding reasons for- waiver, Roberts’s reasoning is ultimately tainted by his schizophrenic symptoms. He explained that much of Roberts’s thinking about how to proceed is clouded by his psychosis. Therefore, in his opinion, Roberts does not have the capacity to choose between life and death or to make a knowing and intelligent waiver of his appellate rights. Accordingly, both experts testified that Roberts’s mental illness affects his ability to make a rational decision about waiving his postconviction rights. Although Dr. Peacock refused to offer an opinion on the specific inquiry as to whether Roberts is competent, his remaining testimony suggests that Roberts’s psychosis indeed impacts his ability to choose between life and death and knowingly and intelligently waive his postconviction rights. |sThe other evidence presented to the circuit ■ court does not compel an alternative - conclusion. ■ Indeed, the only remaining evidence presented which rhight support a finding of competency are Roberts’s letters to the circuit court and to the federal district court in which he asserts his desire to waive. Yet, as Dr. iPeacock testified, Roberts’s auditory hallucinations may affect the content of his letters since he frequently hears voices when he writes. Despite our belief that the trial court is in the best position to assess credibility and weigh the evidence, in this case we are left with a firm conviction that a mistake has been made. We hold that the circuit court was clearly erroneous when it concluded that Roberts was competent to waive post-conviction review.[2] The evidence before the circuit court evinces that it is undeniable that Roberts suffers from schizophrenia, that these symptoms of his psychological -disorder clearly impact his ability to choose between life and death and to knowingly and intelligently waive his appeal rights, and the State’s own expert could not conclusively find that Roberts’s rational reasoning was greater than his psychotic reasoning for waiving his appeal rights. We, therefore, reverse and remand to the circuit court for postconviction proceedings under Arkansas Rule of Criminal Procedure 37.5. |flRoberts makes two additional arguments on appeal. First, he argues that we should extend the “Robbins review,” which requires mandatory. appellate review regardless of whether the defendant waives his right to direct appeal, and require mandatory Rule 37.5 review in all capital cases. • See Robbins, 339 Ark. 379, 5 S.W.3d 51. While we are not inclined to depart-from our current procedure, we are mindful of the extraordinary amount of time it has taken for this case to reach a conclusion, the gravity of the sentence, and the impact the lack of finality has had on the parties, particularly the' victim’s family. For this reason, we refer to the Committee on Criminal Practice for its' review and consideration the issue of whether postcon-viction proceedings under Arkansas Rule of Criminal Procedure 37.5 should be mandatory and not subject to waiver. : Second, Roberts asserts that the circuit court’s acceptance of his waiver violates the “solid footing” doctrine outlined in Porter v. State, 332 Ark. 186, 188, 964 S.W.2d 184, 185 (1998). The circuit court concluded that this issue was inapplicable given its finding that Roberts was competent. Because we now have reversed the circuit court’s finding that Roberts was competent, this issue does not require our consideration on appeal. Reversed and remanded. Brill, C.J., and Danielson and Goodson, JJ., dissent. . In his dissent, Chief Justice Brill claims that due to -the special nature of death- penalty cases, we should reverse and remand with instructions to the circuit court. Due to the special nature of death cases, this is precisely ■ why we are affording the defendant the relief requested.. The dissent also fails to detail the ''instructions” it would give to the circuit court. Presumably, the Chief Justice's dissent would direct this circuit court that no\V has a different judge -who did not preside over the competency hearing, to review the-same evidence and testimony examined by this court and engage in the hollow exercise of composing another order with additional reasons for Judge Looney's finding of competency. Or worse yet, the dissent would allow the circuit court to conduct a rehearing on competency, giving the State, in a death case, a second chance to present its -evidence. Either scenario would only further delay justice, and frustrate the parties and process in this death penalty case. . Chief Justice Brill's dissent claims that in so holding this court “engages in fact-finding that is within the exclusive province of the . circuit court.” However, it is the duty of this court to review the circuit court’s fact-finding for error, particularly in death penalty cases, which ■ as the dissent admits, are different from other criminal cases due to the finality of the punishment. Indeed, issues of competency are of utmost importance in death penalty cases, and the circuit court’s fact-finding is not immune from review. See Newman v. State, 2014 Ark. 7, 2014 WL 197789; Harris v. State, 238 Ark. 780, 384 S.W.2d 477 (1964).