Cite as 2020 Ark. 110

# SUPREME COURT OF ARKANSAS

No. CR–19–351

| | | |
|---|---|---|
| JERRY LARD | | **Opinion Delivered:** March 12, 2020 |
| | APPELLANT | APPEAL FROM THE GREENE COUNTY CIRCUIT COURT [NO. 28CR-12-173] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE BRENT DAVIS, JUDGE |
| | | AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

Jerry Lard, who has been sentenced to death for capital murder, appeals the circuit court's order that he can waive his right to postconviction relief, including his Rule 37.5 petition. Additionally, he appeals the circuit court's declining to address whether he is constitutionally ineligible for the death penalty due to mental disability. We affirm.

## I. *Background*

A Greene County jury convicted Lard of capital murder, attempted capital murder, and possession of a controlled substance and sentenced him to consecutive sentences of death, life in prison, and ten years in prison. Lard appealed his conviction, and in 2014, we affirmed. *Lard v. State*, 2014 Ark. 1, 431 S.W.3d 249.

In 2015, Lard filed a petition for postconviction relief with the circuit court pursuant to Arkansas Rule of Criminal Procedure 37.5. He argued that his counsel was constitutionally ineffective for failing to sufficiently investigate whether he was intellectually

disabled. The circuit court initiated a Rule 37.5 hearing during which Lard's counsel presented the testimony of Dr. Daniel Reschly, an experienced psychologist with a doctorate in philosophy who evaluated Lard after his conviction. Dr. Reschly diagnosed him with mild intellectual disability. After Dr. Reschly testified, the court recessed the hearing to allow the State to prepare its cross-examination of Dr. Reschly and to retain a rebuttal expert.

In the interim, Lard's postconviction counsel was permitted to withdraw after asserting that his relationship with Lard was "irreparably harmed." Newly appointed counsel advised the circuit court that Lard desired to waive his postconviction remedies, including his Rule 37.5 petition, which counsel asked the court to dismiss. The circuit court suspended the Rule 37.5 hearing and ordered Lard to undergo an independent psychological evaluation. After that evaluation, the circuit court held a hearing to determine whether Lard had the capacity to waive his postconviction remedies. Based on the evidence submitted at the hearing, the circuit court concluded that Lard's waiver was made knowingly and intelligently and with the capacity to choose between life and death. Lard appeals.

II. *Analysis*

A. Ineligible for Death Penalty Due to Mild Intellectual Disability

First, in his Rule 37.5 petition, Lard argued that under Ark. Code Ann. § 5-4-618, he could not have been sentenced to death because of his intellectual disability and that his counsel failed to investigate his adaptive functioning deficits necessary to prove his intellectual disability. To the extent Lard now argues that he should not have been sentenced to death because of his intellectual disability, the circuit court had to determine whether Lard was competent to waive before considering this and any other postconviction

2

arguments. Because, as discussed below, Lard has waived his postconviction remedies, Lard also has waived this argument.

Additionally, Lard argues that he is ineligible for execution because his expert diagnosed him with mild intellectual disability. The Supreme Court in *Atkins v. Virginia* categorically prohibited the execution of mentally disabled individuals. 536 U.S. 304 (2002) (forbidding imposition of the death penalty on persons who are intellectually disabled). After Lard asked the circuit court to dismiss his Rule 37.5 petition, Lard filed a "Motion for Post-Conviction Hearing" asserting, "there exists credible evidence . . . that Defendant is not eligible to be executed." Lard similarly argues on appeal that, "This Court should . . . reverse and remand the case for a hearing on the issue of Lard's intellectual disability as a bar to his execution." The circuit court also refused to address this argument and limited the hearing to the issue of competency to waive. Lard claims the circuit court's refusal to consider this issue was erroneous. However, this argument is not currently ripe for our review because Lard's execution date has not been set. *See Isom v. State*, 2015 Ark. 219, 462 S.W.3d 638; *Nooner v. State*, 2014 Ark. 296, 438 S.W.3d 233; *see also Roberts v. State*, 2020 Ark. 45. When an execution date has been scheduled, the issue will be ripe as to the experts' disagreement whether Lard's current mental status is such that he cannot be executed. Therefore, as a matter of law, we find that the circuit court correctly refused to decide whether Lard can be executed due to an intellectual disability.

B. Waiver of Postconviction Remedies

Lard next argues that the circuit court's finding that he was competent to waive was clearly erroneous. A defendant sentenced to death will be able to forgo postconviction

3

remedies only if he has been judicially determined to have the capacity to understand the choice between life and death and to knowingly and intelligently waive any and all rights to appeal his sentence. *Roberts v. State*, 2016 Ark. 118, 488 S.W.3d 524. This court has required that a timely mental-competency evaluation be completed in order for the circuit court to determine if the defendant is presently competent to waive. *Roberts v. State*, 2013 Ark. 57, at 9, 426 S.W.3d 372, 377. We will not disturb the circuit court's decision on the issue of waiver unless its findings are clearly erroneous. *Roberts*, 2016 Ark. 118, at 6, 488 S.W.3d at 528. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id*.

After Lard requested waiver of his postconviction remedies, the circuit court ordered him to undergo competency testing by a disinterested psychiatrist or qualified psychologist. Dr. John Casey, a forensic psychiatrist with the Arkansas State Hospital, evaluated Lard in May 2018. Dr. Casey diagnosed Lard with borderline intellectual functioning, but not an intellectual disability. At the waiver hearing, Dr. Casey explained that an individual with an intellectual disability has a low IQ and has adaptive-functioning deficits that are specifically attributable to that person's subaverage intelligence. Dr. Casey testified that Lard's IQ scores of 70 and 72 were within the low-average range of intelligence and acknowledged that Lard had some adaptive-functioning issues. In Dr. Casey's opinion, Lard's borderline intellectual-functioning diagnosis did not render him incapable of appreciating the difference between life and death or of knowingly and intelligently waiving his right to appeal.

Dr. Reschly also testified at the competency hearing. Dr. Reschly had not evaluated Lard since October 2015 when his opinions were offered in support of Lard's Rule 37.5 petition. He diagnosed Lard with mild intellectual disability. He based his opinion on Lard's low IQ and adaptive-behavior deficits. Unlike Dr. Casey, Dr. Reschly opined that Lard's adaptive-behavior deficits had been lifelong and a result of his low functional intelligence. However, Dr. Reschly did not render an opinion on whether Lard's mild intellectual disability precluded Lard from knowingly and intellegently waiving his right to appeal. Instead, he stated that a person with a mild intellectual disability "would be impaired in thinking about [the waiver] and understanding the consequences, and then making a good judgment about that complex issue."

Lard also testified at the hearing. He explained that it was always his intention to waive his postconviction appeal after his direct appeal was denied. He wanted to waive his postconviction rights because he wanted to avoid "wasting away in prison" and the difficulties that the process would have on his family and the victim's family. He understood that if he pursued his postconviction rights, he could possibly obtain a new trial or be resentenced to life, but if he waived his postconviction rights, he was choosing to have his execution carried out. He also stated that he understood that death means "[y]ou're no longer, you cease to exist. Anything and everything about you are nothin' but memories. And in time, memories fade."

After the competency hearing, the circuit court concluded that Lard was competent to knowingly and intelligently waive his postconviction relief and had the capacity to choose between life and death and to have his death sentence carried out. The court stated that Lard

5

understood that his decision to waive his Rule 37.5 petition could likely result in his execution. The circuit court also explained that while Dr. Reschly diagnosed Lard with mild intellectual disability, he did not examine or interview Lard specifically to determine Lard's competency to waive, and he did not opine that Lard lacked the competency to waive.

We cannot say that the circuit court's conclusion that Lard has the capacity to understand the choice between life and death and to knowingly and intelligently waive his postconviction rights to appeal was clearly erroneous.[1] While Dr. Casey and Dr. Reschly rendered different diagnoses, only Dr. Casey evaluated Lard and rendered an opinion on Lard's competency to waive. And competency to waive was the only issue before the circuit court. Dr. Casey specifically concluded that Lard was competent despite his borderline intellectual-functioning diagnosis. Although Dr. Reschly diagnosed Lard with mild intellectual functioning, he did not testify that Lard lacked the capacity to understand his choice or to waive knowingly and intelligently. Additionally, Lard's testimony, which the circuit court found cogent, demonstrated he understood his decision and its consequences.

Lard relies on our decision in *Roberts* to support his argument that we should reverse the circuit court's decision. 2016 Ark. 118, 488 S.W.3d 524. But *Roberts* is distinguishable. There, the experts agreed that Roberts suffered from schizophrenia; Roberts's expert, Dr. Fujii, opined that he was incapable of waiving; and the State's expert, Dr. Peacock, failed to

---

[1]Lard argues that the circuit court did not make specific findings with respect to the competing opinions of Dr. Reschly and Dr. Casey, and because no specific findings were made, we owe the circuit court no deference. We disagree. The circuit court's order explains the opinions of both experts and clearly defers to the findings of Dr. Casey, who evaluated Lard more recently and specifically to determine Lard's competency to waive. The circuit court also noted that Dr. Reschly did not opine as to the issue before the court.

reach a conclusion on Roberts's competency to waive. *Id*. at 6–7, 488 S.W.3d at 528–29. We noted that "although Dr. Peacock refused to offer an opinion on the specific inquiry as to whether Roberts is competent, his remaining testimony suggests that Roberts's psychosis indeed impacts his ability to choose between life and death and knowingly and intelligently waive his postconviction rights." *Id*. at 7, 488 S.W.3d at 529. Here, Dr. Casey opined that, in his opinion, Lard is competent to waive, and Dr. Reschly, despite diagnosing Lard with mild intellectual disability, was unable to affirmatively rebut that conclusion.

We therefore hold that the circuit court's finding that Lard has the capacity to knowingly and intelligently waive his postconviction remedies, including his Rule 37.5 petition, was not clearly erroneous. And we affirm the circuit court's dismissal of Lard's Rule 37.5 petition.

Affirmed.

Special Justice GREGORY L. VARDAMAN joins.

WYNNE, J., concurs.

HART, J., dissents.

KEMP, C.J., not participating.

**ROBIN F. WYNNE, Justice, concurring.** While I fully join the majority's opinion on the second point, I write separately to express my concern with the majority's disposition of point one on ripeness grounds. The majority holds that Lard's claim that he is ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002), because he is intellectually disabled is not ripe for this court's review because his execution date has not been set. However, the cases the majority cites do not support this position. In *Isom v. State*, 2015 Ark.

219, 462 S.W.3d 638, this court held that Isom's claim that he was incompetent to be executed due to a stroke he suffered while incarcerated was not ripe for review without an execution date being set. We wrote, "Although we acknowledge Isom's contention that he has reached his maximum recovery and that he will not regain any additional functioning, we decline to evaluate his competency for execution in the absence of an execution date because Isom's condition could change, positively or negatively, before Isom's execution date is set." *Isom*, 2015 Ark. 219, at 19, 462 S.W.3d at 650. In *Nooner v. State*, 2014 Ark. 296, 438 S.W.3d 233, this court held that Nooner's claim of incompetency to be executed due to a severe case of schizophrenia was not ripe for review in that proceeding on a motion to recall the direct-appeal mandate. Nooner's counsel conceded as much in that case; counsel intended to seek a stay of execution, should one be set, based on the contention that Nooner is incompetent for execution under *Panetti v. Quarterman*, 551 U.S. 930 (2007), and Arkansas Code Annotated section 16-90-506(c)–(d) (Repl. 2006). In the recent case *Roberts v. State*, 2020 Ark. 45, 592 S.W.3d 695, this court affirmed the denial of Roberts's Rule 37.5 petition. Regarding his argument that he was ineligible for the death penalty due to intellectual disability, we noted that the issue had been raised and rejected before trial, that this court had affirmed on direct appeal, and that the issue could not be reargued in postconviction proceedings. In short, none of these cases stands for the proposition that a claim of intellectual disability (as opposed to incompetency to be executed) is not ripe until an execution date is set.

Intellectual disability and incompetency to be executed are two distinct claims. The Eighth Circuit Court of Appeals recognized this distinction in *Davis v. Kelley*, 854 F.3d 967

(8th Cir. 2017), when it wrote that the issue of intellectual disability "does not suddenly become ripe when the execution date is imminent." *Davis*, 854 F.3d at 973. In rejecting Davis's motions to recall the mandate or, alternatively, for leave to file a successive habeas petition and to stay his execution based on an *Atkins* claim, the Eighth Circuit wrote:

> *Ford* [*v. Wainwright*, 477 U.S. 399 (1986),] and its progeny focus on the inmate's competency at the time of execution. This makes sense because competency can be lost or regained over time. As stated in *Moore* [*v. Texas*, 137 S. Ct. 1039 (2017)], . . . a core element of intellectual disability is "the onset of these deficits while still a minor." 137 S. Ct. at 1045.

> In contrast to *Ford*, [*Stewart v.*] *Martinez-Villareal*[, 523 U.S. 637 (1998)], and *Panetti* [*v. Quarterman*, 551 U.S. 930 (2007)], *Atkins* concerned intellectual disability, not competency. In creating "'a substantive restriction on the State's power to take the life' of a mentally retarded offender," *Atkins* [*v. Virginia*, 536 U.S. 304 (2002),] focused exclusively on the prisoner's culpability or reliability at the time that the crime was committed. *Atkins*, 536 U.S. at 321 (quoting *Ford*, 477 U.S. at 405).

*Davis*, 854 F.3d at 971 (parallel citations omitted).

Here, Lard claims that he is intellectually disabled per *Atkins*. In Arkansas, "intellectual disabilit[y]" means "significantly below-average general intellectual functioning accompanied by a significant deficit or impairment in adaptive functioning manifest in the developmental period, *but no later than eighteen (18) years of age*," and "[a] deficit in adaptive behavior." Ark. Code Ann. § 5-4-618(a)(1)(A)−(B) (Supp. 2019) (emphasis added). Unlike a competency claim based on mental illness, intellectual disability is, by definition, unchanging after age eighteen. Accordingly, there is no reason to hold that Lard's claim of intellectual disability is not ripe. Rather, in my view, the claim is procedurally barred by the particular posture of this appeal. The intellectual-disability claim could have been raised in Lard's Rule 37.5 petition, but he has waived his right to pursue that petition.

**JOSEPHINE LINKER HART, Justice, dissenting.** In affirming the circuit court's refusal to rule on Mr. Lard's eligibility to be sentenced to death, the majority has conflated the rule of law announced in *Atkins v. Virginia*, 536 U.S. 304 (2002), with the law set forth in Arkansas Code Annotated section 5-4-618. While both concern intellectually disabled individuals, they each address distinctly different situations. *Atkins* and its progeny proscribe the *execution* of a person with an intellectual disability at the time of the crime. Section 5-4-618 proscribes *sentencing to death* a defendant with an intellectual disability. *Atkins* is directed to the executive branch, which is charged with carrying out executions, and section 5-4-618 is directed toward the judicial branch, which handles the trial.

It is not mere happenstance that asserting relief under these respective authorities must happen at different stages of the execution process. As the majority correctly notes, an *Atkins* claim can only be made after a death warrant has issued. *See Isom v. State*, 2015 Ark. 219, 462 S.W.3d 638. Conversely, section 5-4-618 charges an accused with raising his intellectual disability prior to trial. This distinction is pivotal in the case before us because the proceeding under review arose from the filing of a claim of ineffective assistance of counsel under Arkansas Rule of Criminal Procedure 37.1. It is impossible to ignore that the allegations in Mr. Lard's Rule 37 petition concern his trial counsel's failure to invoke section 5-4-618.

Mr. Lard's undisputed intellectual deficit, and his trial counsel's admitted failure to invoke section 5-4-618 is a structural error that the circuit court—and this court—should not ignore. Prior to halting the Rule 37 hearing, Mr. Lard made a prima facie case that he was ineligible to be *sentenced* to death. Further, he established that his trial counsel had not

10

made the pretrial filing required by section 5-4-618. While the circuit court granted the State a lengthy delay to enable it to search for a way to oppose Mr. Lard's petition—from November 18, 2015, to July 25, 2016—the hearing was never actually completed and the circuit court never ruled on Mr. Lard's petition.

I am mindful that Mr. Lard moved to dismiss his petition prior to the completion of the hearing, and the circuit court's attention shifted to the issue of whether Mr. Lard was competent to waive his right to postconviction proceedings. The circuit court erred in doing so. While Mr. Lard certainly had an *interest* in the Rule 37 proceeding, the issue under consideration was the State of Arkansas's policy of not allowing intellectually disabled persons to be *sentenced* to death. Mr. Lard was not empowered by section 5-4-618, or any other law, to circumvent the State's clearly articulated public policy. Given the compelling State interest in making sure that the imposition of the death penalty strictly complies with the Constitution, Mr. Lard's motion to dismiss should have been denied. Accordingly, this case should be reversed and remanded to the circuit court to complete the inquiry that was set in motion by Mr. Lard's Rule 37 petition.

I respectfully dissent.

*Short Law Firm*, by: *Lee D. Short*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.