# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00260-CV

**Joann Crawford, Appellant**

**v.**

**Buffalo Creek Properties, LLC, Appellee**

### FROM THE 335TH DISTRICT COURT OF BASTROP COUNTY
### NO. 2031-335, THE HONORABLE REVA TOWSLEE-CORBETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Joann Crawford appeals from the trial-court judgment granting specific performance of a contract for Crawford to sell real property. Crawford raises several issues that are not supported by the record. We will affirm the judgment.

## BACKGROUND

Because there is no reporter's record before this Court, this recital is based on documents in the clerk's record, including the judgment.

Buffalo Creek Properties, LLC, sued Crawford and Vickie Morgan[1] seeking specific performance of a written agreement for Crawford to sell a parcel of real estate. According to a Buy-Sell Agreement (Contract) attached to Buffalo Creek's live petition, Crawford agreed in writing on August 15, 2021, to sell her parcel to "Trails End Investments, LLC 'or assigns.'" The

---

[1] Morgan is not a party to this appeal.

trial court found that Trails End assigned its rights under the Contract to Buffalo Creek on August 16, 2021. The Contract required Crawford to pay the costs to obtain, deliver, and record releases of any liens required to be released in connection with the sale. As part of the Contract, Crawford represented "that there will be no liens, assessments, binding agreements, or other security interests against the property that will not be satisfied out of the sales price." Buffalo Creek alleged that, on December 8, 2021, Crawford informed Buffalo Creek that the "deal was off."

Buffalo Creek sued Crawford and Morgan and asserted that it filed a notice of lis pendens with the Bastrop County Clerk in February 2022. The court found that Crawford deeded the parcel to Morgan on March 17, 2022, with full knowledge that the suit had been filed and public knowledge of the lis pendens. Crawford did not timely file an answer. Morgan answered, seeking reimbursement for taxes that she said she paid to stave off a tax foreclosure sale. In March 2023, Buffalo Creek filed a motion to compel Crawford and Morgan to provide answers to interrogatories and disclosures that were due in November 2022.

All three parties appeared at the February 28, 2024 non-jury trial. Buffalo Creek and Morgan were represented by counsel. Crawford appeared without an attorney, as she does on appeal. The trial court awarded judgment to Buffalo Creek, concluding that Morgan had public knowledge of this lawsuit when she received the deeds from Crawford and, therefore, was not a bona fide purchaser. The court found that Buffalo Creek was ready, willing, and able to purchase the property from Crawford and had tendered performance timely.

The trial court ordered specific performance of the Contract as modified by the judgment. The trial court ordered Buffalo Creek to pay the agreed-upon sales price of $100,000 less amounts paid or owed for expenses incurred to effectuate the purchase, including court costs,

2

attorney's fees, compensation of a life-estate holder not expressly addressed in the Contract, property taxes and late fees, and surveyor's costs. The court found that Crawford's mother had a 1/3 life estate in the parcel. The court held that, after offsets, Buffalo Creek owed Crawford $38,197.70 and ordered Buffalo Creek to deposit that amount into the registry of the court. The court held that Morgan could seek reimbursement for her tax payments from Buffalo Creek's payment to Crawford under the judgment. The court ordered Crawford and Morgan to execute deeds conveying their interests in the parcel to Buffalo Creek.

Crawford appealed on April 22, 2024. Only after Buffalo Creek filed its brief in February 2025 did Crawford request and pay for a reporter's record. After that record was filed on March 27, 2025, Crawford submitted a reply brief that this Court's clerk's office received but did not file because it lacked a signature and a certificate of compliance with rules. Buffalo Creek filed a motion to strike the reporter's record as untimely requested and filed; it argued that allowing the filing of a year-late-requested record would require rebriefing. Buffalo Creek also asked that this Court strike or disregard Crawford's reply brief because it contained issues not raised in her original brief or relevant to the appeal. This Court requested that Crawford file a response to the motion to strike or disregard the reporter's record; she did not file a response.

Two weeks after the time for response passed, this Court granted the motion to strike the reporter's record. This Court dismissed as moot Buffalo Creek's motion to strike the reply brief because Crawford never supplied a signature or certificate of compliance as requested. Crawford filed a motion for rehearing of the order striking the reporter's record, asserting that her inability to pay for the reporter's record caused her delay in requesting it, that she had technological difficulties in preparing her brief and staying current on notices from the court, and that Buffalo

3

Creek exploited her procedural disadvantage. This Court denied Crawford's motion to reconsider the order striking the reporter's record.

## DISCUSSION

Crawford contends that the trial court erred by ordering specific performance for the following reasons: (1) Crawford justifiably disagreed with a proposed amendment to the Contract, (2) the court ordered her to reimburse taxes that were the life tenant's responsibility, (3) the court did not grant her reimbursement from Buffalo Creek for taxes paid, (4) her pro se status affected the fairness of the trial, (5) the trial court did not consider the validity of the Contract due to the lack of notarization and Buffalo Creek's name change, and (6) collusion between the life tenant and Buffalo Creek affected her consent to the contract.

Specific performance is a remedy for breach of contract when monetary damages would be inadequate. *White Knight Dev., LLC v. Simmons*, 718 S.W.3d 203, 209 (Tex. 2025). A party seeking specific performance must prove that it has complied with its obligations under the contract (unless excused by the other party's breach or repudiation) and that it was ready, willing, and able to timely perform its obligations under the contract. *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593-94 (Tex. 2008). We review a trial court's award of specific performance for abuse of discretion. *See Edwards v. Mid–Continent Off. Distribs.*, L.P., 252 S.W.3d 833, 836 (Tex. App.— Dallas 2008, pet. denied); *see also Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004) (noting that appellate court will reverse trial court's ruling on claim seeking equitable relief only if it is arbitrary, unreasonable, or unsupported by guiding rules and principles).

Where, as here, there is no timely-filed reporter's record, and findings of fact and conclusions of law are neither requested nor filed, the judgment of the trial court implies all necessary findings of fact to sustain the judgment. *See Waltenburg v. Waltenburg*, 270 S.W.3d 308,

4

312 (Tex. App.—Dallas 2008, no pet.). In other words, we must presume that the unfiled reporter's record supports the decisions of the trial court. *See Bennett v. Cochran*, 96 S.W.3d 227, 230 (Tex. 2002). Crawford did not request a reporter's record at or before the time for perfecting an appeal as required. *See* Tex. R. App. P. 34.6(b)(1). She did not request it until after Buffalo Creek filed its brief. While we are not to refuse to file a reporter's record because it was not timely requested,[2] parties are required to cite to the record in their brief[3] and parties generally waive arguments that are not raised in their initial brief.[4] In her original brief, Crawford did not cite to the as-yet-unrequested reporter's record and did not file an amended original brief with citations to the reporter's record. She did not file a reply brief compliant with relevant rules after the reporter's record was filed. Accordingly, we must review the issues presented in her original brief without citations to a reporter's record.

The trial court ordered specific performance of the Contract. The court described the Contract between Trails End and Crawford and noted that Trails End assigned its purchase rights to Buffalo Creek. The court found that Buffalo Creek was at all times ready, willing, and able to fulfill its obligations under the Contract and tendered performance by submitting the purchase price. *See DiGiuseppe*, 269 S.W.3d at 593-94. We must presume that the reporter's record would have supported those findings as well as the findings regarding payments made to obtain title clear from the life-estate holder and to pay off tax debts owed. *See Bennett*, 96 S.W.3d at 230. Given those presumptions, we cannot say that the trial court erred by finding that Crawford breached the contract and by ordering specific performance as it did.

---

[2] *See* Tex. R. App. P. 34.6(b)(3).
[3] *See id*. 38.1(g), (i) (requiring briefs to cite to record).
[4] *See Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 439 (Tex. App.—Austin 2004, pet. denied).

5

Crawford's issues on appeal do not show a basis for reversal.

(1)     Crawford claims that the trial court erred by granting specific performance despite her "justified" refusal to agree to a proposed amendment to the Contract. She does not specify in her brief what amendment she refused to accept. She cites cases that she purports support the proposition that any amendments to the Contract had to be in writing. However, Crawford's cited cases are either "hallucinated" cases or do not support the proposition that the mere proposal of an amendment nullified the Contract.[5]

Regardless of what amendment Crawford disputes, Buffalo Creek sought specific performance of the original Contract, and the court awarded that relief. There is no showing that the court ordered specific performance of any amendment Buffalo Creek proposed. The Contract called for any liens or binding agreements to be "satisfied out of the sales price." The court "reformed" the Contract to adjust Buffalo Creek's payment due for the expenses of effectuating the Contract such as courts costs, attorney's fees, property-tax payments, and payment to the life-estate holder. Even if Crawford's refusal to agree to any proposed amendments was valid, that does not require reversal of the judgment.

---

[5] For example, she lists *In re Estate of Denman* as being found at 462 S.W.3d 641 (Tex. App.—Austin 2015, no pet.). However, that page citation is partway through a criminal case from Arkansas, *Isom v. State*, 462 S.W.3d 638 (Ark. 2015). She describes *Denman* as involving a dispute over the validity of a land-sale-contract amendment. The most recent Texas case with the style *In re Denman* has a different cite and is a non-substantive grant of a motion to dismiss. *See* No. 04-14-00111-CV, 2014 WL 4627603 (Tex. App.—San Antonio, no pet.). Another case with that name concerned the statute of limitations for declaratory judgment actions. 362 S.W.3d 134 (Tex. App.—San Antonio 2011, no pet). Still another concerned the independent co-executor's standing to appeal and how to apply a generation-skipping tax. *See* 270 S.W.3d 639 (Tex. App.—San Antonio 2008, pet. denied).

One case that she cites discusses a subdivision covenant that required lease agreements to be in writing and discussed restrictions on the modifications of covenants, but did not pertain to a requirement that amendments to a land-sale contract be in writing. *See Angelwylde HOA, Inc. v. Fournier*, No. 03-21-00269-CV, 2023 WL 2542339, at *1 (Tex. App.—Austin Mar. 17, 2023, pet. denied) (mem. op.).

(2)     Crawford asserts that the court erred by ordering her to reimburse Buffalo Creek for paying back taxes that were a life tenant's responsibility. We must presume that the record supports a finding that—regardless of the life tenant's role in paying property taxes—Crawford had the responsibility under the Contract to obtain a release of liens and satisfy any liens, assessments, binding agreements or other security out of the sales price.

Specific performance can be accompanied by monetary compensation when needed to put the parties in the same position as if the contract had been performed. *See White Knight*, 718 S.W.3d at 208-10. The ordered reimbursement of the back taxes paid is consistent with satisfying Crawford's responsibility to satisfy any liens, assessments, binding agreements, or other security out of the sales price.

(3)     Crawford contends that the court erred by ordering Crawford to reimburse Buffalo Creek for the cost of acquiring the life-estate interest. We presume that the record supports a finding that the life-estate owner's interest would be satisfied out of the sales price in order to effectuate the sale.

Crawford also asserts that an LLC cannot have a life-estate interest. But the unification of the ownership of the life estate and the reversionary estate leads to a merger of the interests in Buffalo Creek, extinguishing the life estate. *See Steger v. Muenster Drilling Co.*, 134 S.W.3d 359, 376 (Tex. App.—Fort Worth 2003, pet. denied) (stating test for merger of estates). Crawford has not shown that the trial court's judgment is erroneous.

(4)     Crawford claims that her pro se status affected the fairness of the trial. We must presume that the record supports a finding that her self-representation did not affect the fairness of the trial. Crawford cites a case and a study that she asserts show that courts have

7

mistreated pro se litigants but these authorities are not properly cited.[6]  She does not, however, show when or how her pro se status caused the trial court in this case to treat her improperly in a way that probably caused the rendition of an improper judgment or probably prevented her from properly presenting the case to this Court.  *See* Tex. R. App. P. 33.1 (describing how to preserve error), 44.2 (describing standard for reversible error).  We presume that proceedings in the trial court are regular and correct unless the record shows otherwise.  *See Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 545 (Tex. 2018).  We construe pro se filings liberally and with patience "so as to obtain a just, fair and equitable adjudication of the parties' rights."  *Veigel v. Texas Boll Weevil Eradication Found.*, 549 S.W.3d 193, 195 n.1 (Tex. App.—Austin 2018, no pet.).  However, pro se litigants must comply with the same rules and standards as must litigants represented by attorneys.  *Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005).

Crawford also asserts that the "aggressive actions" of Buffalo Creek contributed to an unfair trial process.  While it is unclear whether Crawford presented this argument to the trial court, we must presume that the record supports a negative finding on this assertion.  The clerk's record shows that Buffalo Creek filed suit on February 15, 2022; Buffalo Creek sent discovery requests in October 2022, to which responses were due in November 2022 and did not seek to compel responses until March 2023; and trial was held in February 2024.  Neither the pleadings nor the pace of the lawsuit demonstrate undue aggression.  The record before us does not support a conclusion that Buffalo Creek conducted itself with aggression that caused reversible error as defined in Texas Rule of Appellate Procedure 44.1.

---

[6]  Crawford refers to "*Hercenberger v. Proctor*" without reporter citation for the proposition that the right to a tribunal free from bias or prejudice is required by the Due Process Clause of the Constitution.  She refers to a study titled "Underestimating the Unrepresented: Cognitive Biases Disadvantage Pro Se Litigants in Family Law Cases."  We find no binding authority by that name, and Crawford does not identify where the study was published.

(5)     Crawford contends that the court erred by not considering the validity of the Contract due to the lack of notarization and because the LLC changed its name.  However, land-sale contracts are not required to be notarized.  *See* Tex. Bus. & Com. Code § 26.01 (requiring real-estate sales contract to be in writing and signed by party to be charged with promise; no notarization requirement).  Further, we must presume that the record supports a finding that no relevant entity changed its name improperly and the trial court's express finding that the contracting entity (Trails End) assigned its right to purchase the parcel to a different entity (Buffalo Creek) the day after Crawford signed the contract with Trails End.

(6)     Crawford contends that her consent to the Contract was affected by collusion between the life tenant and Buffalo Creek.  We must presume that the record does not support a finding of collusion that affected Crawford's consent in a legally significant way.  She asserts that Buffalo Creek contacted her through another person's texting account and used it to send "[e]ndless, harassing text messages attempting to entice appellant with dollar symbols and offers of personal 'help' with financial burdens that could be holding back the closing of business.  Offering storage space funding, help paying taxes as well as transportation [etc.] (text message documentation is available)."  Crawford argues that these assertions show fraud, but does not assert that any of the representations or enticements were false as is required to show fraud.  *See Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (defining elements of fraud).  Further, the time for introducing documentation is at trial, and the record before us lacks the asserted text-message documentation.

We note further that Crawford's issues would show no error even if we considered the reporter's record.  In an abundance of caution, we have reviewed the reporter's record and exhibits that we struck.  Viewed under the proper standard of review, the record supports the trial

court's judgment.[7] When faced with conflicting or disputed evidence, the trial court was best positioned to assess credibility and weight of the evidence.[8] The record did not show the trial court acting with bias against Crawford because she represented herself and did not show Buffalo Creek acting with impermissible aggression. Crawford did not provide the necessary evidence of collusion between Buffalo Creek and the life tenant or get the allegedly fraudulent text messages admitted into evidence.

## CONCLUSION

Finding no reversible error presented, we affirm the judgment.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Affirmed

Filed: April 23, 2026

---

[7] Under the legal-sufficiency standard, when the appellant attacks the legal sufficiency of an adverse finding on which she did not have the burden of proof, she must demonstrate on appeal that there is no evidence to support the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). Under the factual-sufficiency standard, when the appellant attacks the factual sufficiency of an adverse finding on which she did not have the burden of proof, we consider and weigh all the evidence in the record pertinent to the finding to determine if the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016).

[8] Under legal- and factual-sufficiency standards, the factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) (describing legal-sufficiency review); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (describing factual-sufficiency review).